**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

TOMAS DURAN,                        §
                                   §
    Plaintiff,                    §
                                   §
vs.                                §    C.A. NO. C-04-500
                                   §
CITY OF CORPUS CHRISTI,            §
                                   §
    Defendant.                    §

<u>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

On this day came on to be considered Defendant Corpus Christi's Motion for Summary Judgment (D.E. 63). For the reasons discussed below, Defendant's Motion is GRANTED.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331.

**II.  BACKGROUND**

On October 4, 2004, Plaintiff Tomas Duran ("Plaintiff") filed suit in this Court against the City of Corpus Christi ("the City") as well as numerous City employees and individual Defendants, alleging that the Defendants "wrongfully failed to renew Plaintiff's health program in retaliation for Plaintiff's protected First Amendment activity" and violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 <u>et</u> <u>seq</u>. (Pl.'s Am. Compl. ("PAC") at ¶¶ 31-35, 41-49.) Plaintiff also asserted a claim against the Defendants for negligent misrepresentation under

-1-

Texas law.  (PAC at ¶ 50.)

In October and November 2004, Defendants filed numerous motions to dismiss Plaintiff's Amended Complaint.  (D.E. 9, 11, 13, 16, 33.)  On January 12, 2005, this Court entered an Order granting the Defendants' motions and entered a Final Judgment dismissing the action.  (D.E. 41, 42.)  Plaintiff subsequently appealed to the United States Court of Appeals for the Fifth Circuit.  (D.E. 43.)  On appeal, the Fifth Circuit affirmed this Court's dismissal of all of the Plaintiff's claims except his 42 U.S.C. § 1983 claim against the City for allegedly retaliating against him in violation of the First Amendment.  (D.E. 52, 53.)  The case was then remanded to this Court for consideration of Plaintiff's sole remaining claim. On June 14, 2006, the City filed a Motion for Summary Judgment on Plaintiff's First Amendment claim.  (D.E. 63.)  On July 5, 2006, Plaintiff filed a response to the City's motion.  (D.E. 66.)  The following facts are not in dispute:

In 1998, Plaintiff prepared and submitted a bid to the City on behalf of Entrust, Inc. ("Entrust"), to provide third-party claims administration services and accounting under the City's health insurance program.  (Pl.'s Ex. ("PE") 35 at ¶¶ 7, 13.)  The City accepted Plaintiff's bid and awarded its health insurance contract ("the Contract") to Entrust.  (PE 2; 35 at ¶¶ 7, 13.)  Among other things, the Contract required Entrust to "provide customer service on claims, eligibility, and benefit issues to City insured", "prepare checks and drafts for claims", and "provide adequate

-2-

internal control procedures to protect the City from any type of financial loss." (PE 2 at 1-2.) The Contract also required Entrust to name one individual as "coordinator to resolve all problems that may arise during the length of this Contract." (PE 2 at 2; 35 at ¶¶ 11, 14.) Entrust appointed Plaintiff to the coordinator position. (PE 1; 35 at ¶¶ 11, 14.)

In April 2002, Plaintiff became aware that the daughter of a City employee ("Daughter LV") had filed an insurance claim (the "LV Claim") with the City. (PE 35 at ¶ 19.) Plaintiff, however, was concerned that Daughter LV may not be eligible for insurance coverage because of her age.[1] (See PE 35 at ¶¶ 16-28.) Plaintiff was also concerned that Daughter LV was not eligible for continuing insurance coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 42 U.S.C. § 300bb-1 et seq., because he believed that "the time for Daughter LV to elect COBRA benefits had long expired". (PE 35 at ¶ 23.) Plaintiff raised his concerns regarding the LV Claim with several City officials and cautioned that the City's reinsurance company would likely refuse to pay the LV Claim, thus exposing the City to liability for the full amount of Daughter LV's present and future medical expenses. (PE 32; 35 at ¶¶ 23, 25, 26, 28.)

On February 28, 2003, a few months before the City's Contract

---

[1] A dependent child of a City employee is generally eligible for coverage under the employee's insurance policy only until age 20 or, if the dependent child is a full-time student, until age 24. (PE 35 at ¶ 17.)

-3-

with Entrust was due to expire, the City issued a Request for Proposals "for health plans administration, health services network, pharmacy benefits management . . . and stop loss insurance." (PE 30 at 317-19; 35 at ¶ 8.)  Once again, Plaintiff prepared and submitted to the City a proposal on behalf of Entrust. (PE 35 at ¶ 34.)  Humana Insurance Company ("Humana"), and other companies, also submitted proposals to the City. (See PE 30; 35 at ¶¶ 8, 34-37.)  On May 27, 2003, the City Council found the Humana proposal "to be the best value for the City in providing these services" and entered into a contract with Humana. (PE 30 at 316; 31 at 16; 35 at ¶ 8.)  The City did not, therefore, renew its contract with Entrust. (PE 35 at ¶¶ 34-37.)

## III.  DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477

U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that

-5-

"improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." <u>Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.</u>, 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Willis</u>, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. <u>See</u>, <u>e.g.</u>, <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." <u>Byrd v. Roadway Exp., Inc.</u>, 687 F.2d 85, 87 (5th Cir. 1982); <u>Aubrey v. Sch. Bd. of Lafayette</u>, 92 F.3d 316, 318 (5th Cir. 1996). If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50.

-6-

**B.    First Amendment Retaliation**

Plaintiff's only remaining claim in this case is that the City failed to renew Entrust's Contract in retaliation for Plaintiff's protected speech under the First Amendment.

The Fifth Circuit has held that "the First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of [his] exercise of First Amendment freedoms." <u>See</u>, <u>e.g.</u>, <u>Colson v. Grohman</u>, 174 F.3d 498, 508 (5th Cir. 1999). "It is well established that a state may not discharge, discipline, or otherwise retaliate against a public employee for exercising his . . . right to free speech." <u>Anderson v. Pasadena Indep. Sch. Dist.</u>, 184 F.3d 439, 444 (5th Cir. 1999) (citing <u>Rankin v. McPherson</u>, 483 U.S. 378, 383 (1987)). Similarly, the government cannot "den[y] . . . public benefits to punish individuals for their speech." <u>Kinney v. Weaver</u>, 367 F.3d 337, 357 (5th Cir. 2004); <u>Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972) (stating that the state "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests- especially, his interest in freedom of speech"). Thus, the Supreme Court has held that the government cannot refuse to renew the contract of an independent contractor on the basis of the contractor's speech. <u>Bd. of County Com'rs v. Umbehr</u>, 518 U.S. 668 (1996); <u>see</u> <u>also</u> <u>Kinney</u>, 367 F.3d at 357-60. In order for an independent contractor to show a First Amendment violation, he must

prove "that the termination [or nonrenewal] of his contract was motivated by his speech on a matter of public concern." Umbehr, 518 U.S. at 685. In other words, the plaintiff must show that "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." See Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

In this case, Plaintiff's First Amendment claim fails because he has not shown that he engaged in a constitutionally protected activity. It is well-settled that only certain speech is protected by the First Amendment. See, e.g., Wallace v. Texas Tech Univ., 80 F.3d 1042, 1050 (5th Cir. 1996). Speech is protected under the First Amendment if the plaintiff speaks as a citizen on a "matter of public concern," as opposed to speaking primarily in his role as an employee. Id. As the Supreme Court noted in the recent case of Garcetti v. Ceballos, — U.S. —, 126 S.Ct. 1951, 1960 (2006), "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960.[2] The Court

---

[2] Although the Ceballos case dealt with the situation of a government official speaking pursuant to his duties as a public

explained that the government's decision to "[r]estrict[] speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer's control over what the employer itself has commissioned or created."  <u>Id.</u>  Thus, the Court must first determine "whether the employee spoke as a citizen on a matter of public concern . . . [because] [i]f the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."  <u>Id.</u> at 1958; <u>see also</u> <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983) (stating that when a person speaks in his capacity as employee, rather than as a citizen upon matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of [the] . . . decision taken by a public agency allegedly in reaction to the employee's behavior"); <u>Wallace</u>, 80 F.3d at 1050 (in order to determine whether speech is entitled to protection, a court "must determine if [the plaintiff's] speech was primarily in [his] role as citizen or

---

employee, this Court finds that the rule in <u>Ceballos</u> is equally applicable to independent contractors such as Plaintiff.  As both the Fifth Circuit and Supreme Court have recognized, "[i]ndependent government contractors are similar in most relevant respects to government employees," <u>Kinney v. Weaver</u>, 367 F.3d 337, 359 (5th Cir. 2004) (quoting <u>Umbehr</u>, 518 U.S. at 684)).  That is especially true where, as here, Entrust's contract with the City *required* Entrust to appoint someone to fill the role of "coordinator" under the Contract.  (PE 2 at § A, 13.)  In fact, Entrust even referred to Plaintiff as the "Designated Coordinator for the City" or "the City's Designated Coordinator."  (PE 27 at 1-2.)

primarily in his role as employee"); <u>Gillum v. City of Kerrville</u>, 3 F.3d 117, 121 (5th Cir. 1993) (court should focus on "the extent to which the terminated employee spoke as a citizen or employee").

In this case, Plaintiff claims he engaged in protected speech when he informed City officials of potential problems with the LV Claim.  (Pl.'s Resp. to Mot. for Sum. Judg. at 17-19.)  Plaintiff, however, has produced no evidence that he spoke as a citizen on a matter of public concern, rather than in his capacity as coordinator under the Contract, when he raised concerns about the City's handling of the LV Claim.  Indeed, Plaintiff's own evidence demonstrates that his speech on the LV Claim was pursuant to his duties as "coordinator" under the Contract.  Under the Contract, Entrust named Plaintiff "as coordinator to resolve all problems that may arise under the length of th[e] Contract."  (PE 2 at § A, 9.)  His position as coordinator required Plaintiff to "be available for consultation purposes in the event there was a problem or situation that arose regarding issues under the [health care] plan documents."  (PE 35 at ¶ 13.)  Furthermore, Plaintiff's position also required him to counsel the City on issues relating to continuing insurance coverage under COBRA.  (PE 37 at 194.)  Thus, Plaintiff's job responsibilities as "coordinator" required him to consult with City officials when eligibility and COBRA issues, such as those raised by the LV Claim, arose.

Indeed, the evidence further shows that Plaintiff himself believed that he was acting in his capacity as coordinator when he

-10-

discussed the LV Claim with City officials.    When the City criticized Plaintiff for discussing the LV Claim with others, (PE 25), Plaintiff defended himself by stating that his discussions regarding the LV Claim were only with City officials pursuant to his duties under the Contract.  (See PE 26.)  For example, in his letter to City officials explaining his actions, Plaintiff wrote:

> as the coordinator designated pursuant to Section 13 of the City's Contract and appointed by Entrust in the resolution of problems, I receive information and necessary documentation to resolve any problems. . . .
>
> I was initially contacted by Entrust early last year concerning a major health claim that raised questions concerning eligibility. The standard operating procedure provides for the verification of eligibility on any claim prior to payment.  I initially went to see Jorge Cruz-Aedo and Donna James at the City to discuss the claim. Subsequently, I discussed the matter with [City Finance Director] Lee Dumbauld.
>
> Upon Entrust's initial review of the eligibility of the claim, it appeared that the individual making the claim was not an eligible participant in the health plan. In this type of situation, the Plan generally cannot honor or pay the claim without the City's specific instructions.    At that point, my sole discussions concerning this claim had been with appropriate City staff concerning eligibility and further administration of the claim.

(PE 26 at 1-2.)  Plaintiff went on to add that, "[m]ore recently, I advised Mayor Neal about this potential liability . . . [but] such information was communicated to the Mayor solely in his capacity as the Mayor of Corpus Christi, and it could not be argued as a breach of any confidentiality provisions of the Contract." (PE 26 at 3.)  Plaintiff was adamant that he had "not disclosed any sensitive information or confidential medical records to third parties . . . [and that he was] well aware of the terms and

-11-

conditions of the City's Contract since [he] was very much involved in the negotiation of that Contract." (PE 26 at 3.)  Furthermore, Entrust echoed Plaintiff's sentiment, writing that:

> [Plaintiff] has assured Entrust that he has not made any disclosures of information to any individuals other than those that were legitimate parties to the Contract and only to the extent necessary to help Entrust fulfill its obligations as the Third Party Administrator ("TPA") which was the role anticipated for the City's Designated Coordinator when the Contract was signed in 1999.

(PE 27 at 1.)  Entrust also added that "[d]ue to the magnitude of the City's potential liability, Entrust, pursuant to Section 13 of the Contract, sought assistance from [Plaintiff], the City's Designated Coordinator.  Entrust provided Mr. Duran with copies of the documentation necessary for him to perform his duties to help resolve any and all problems that may arise during the length of the Contract." (PE 27 at 2-3.)

These statements, by Plaintiff and Entrust, demonstrate that Plaintiff spoke only pursuant to his duties as coordinator under the Contract when he discussed with City officials his concerns regarding the LV Claim.[3]  Plaintiff's emphasis that he had not

---

[3] The only evidence Plaintiff provided to the Court suggesting that he ever spoke about the LV Claim as a citizen on a matter of public concern is a statement in Plaintiff's affidavit which indicated that Plaintiff "informed a contact at the Corpus Christi Caller Times that they may want to look into the matter, without revealing any names of employees or participants." (PE 35 at ¶ 31.)  However, this allegation alone is insufficient to survive summary judgment on Plaintiff's First Amendment claim because there is no evidence that the City was *aware* that Plaintiff had "informed a contact" at the newspaper. See, e.g., Tharling v. City of Port Lavaca, 329 F.3d 422, 428 (5th Cir. 2003) ("It is axiomatic that a party cannot be

"breach[ed] . . . any confidentiality provisions of the Contract" because he had only discussed the "[LV] claim with appropriate City staff concerning eligibility and further administration of the claim," (PE 26 at 1-3), shows that Plaintiff perceived himself as speaking in his official capacity pursuant to his duties.   The undisputed evidence shows that, at the time of Plaintiff's discussions regarding the LV Claim, both Plaintiff and Entrust believed that Plaintiff was merely fulfilling "the role anticipated for the City's Designated Coordinator when the Contract was signed in 1999." (PE 27 at 1.) Acting pursuant to "the role anticipated for the City's Designated Coordinator," however, is insufficient to invoke the protection of the First Amendment. <u>Ceballos</u>, 126 S.Ct. at 1960 ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not [protect] their communications"). Because Plaintiff has no evidence that he engaged in speech protected under the First Amendment, Defendant's Motion for Summary Judgment on Plaintiff's First Amendment Retaliation claim is GRANTED.

---

substantially motivated by a circumstance of which that party is unaware").

**IV.   CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment (D.E. 63) is GRANTED.

SIGNED and ENTERED this 11th day of July, 2006.

_____
                Janis Graham Jack
         United States District Judge

-14-